**FREEDOM COURT REPORTING**

Page 1

1          IN THE CIRCUIT COURT OF HOUSTON COUNTY

2                    STATE OF ALABAMA

3                                    )

4    DENISE BLALOCK,                 )

5                                    )   **ORIGINAL**

6         Plaintiff,      )CIVIL ACTION

7                         )    FILE NO.

8                         )1:06cv381-MHT

9    Vs.                  )

10                        )

11   WAL-MART STORES, INC.           )

12                        )

13        Defendants.        )

14

15              S T I P U L A T I O N

16        IT IS STIPULATED AND AGREED by and

17   between the parties through their

18   respective counsel, that the deposition of

19   DENISE BLALOCK may be taken before Meliaha

20   Cornelius, Commissioner, at the office of

21   W. Davis Malone, III, 112 West Troy Street,

22   Dothan, Alabama 36303, on the 12th day of

23   January, 2007.

**FREEDOM COURT REPORTING**

Page 35

1   the reason why they had to go in there and

2   do the surgery because my elbow hit the

3   pavement, and it caused all the damage, and

4   it caused the muscle damage.  And that's

5   the reason why they had to go in there and

6   repair the muscle, and they had to go in

7   and cut a flap of skin and go in there and

8   cut a flap of skin, put over the muscle to

9   hold the muscle up to keep the muscle from

10  falling back down.

11       Q.    Okay.

12       A.    And that's the reason why -- and

13  that's what's giving me problems.

14       Q.    All right.  And that's your

15  elbow?

16       A.    Yes, sir.

17       Q.    You mentioned Medicaid.  Do you

18  have any sort of health insurance?

19       A.    No, sir.  I had Signa at the time,

20  but my husband, the job he was working at,

21  when he moved to Cullman with me, he quit

22  Family Dollar, and so I don't have Signa

23  anymore.  The only thing I have now is just

**FREEDOM COURT REPORTING**

Page 36

1  Medicaid.

2      Q.    Okay.  Your husband, at the time

3  this happened -- well, up until the time

4  y'all moved, was he working at Family

5  Dollar?

6      A.    Yes, sir.

7      Q.    How long had he worked there?

8      A.    He worked there for about -- I

9  know about three years.

10      Q.    What did he do before that?

11      A.    He worked with MDI.

12      Q.    What's that?

13      A.    It's a garbage place.  And then he

14  worked with APAC.

15      Q.    Did he have, like, a group health

16  plan with Family Dollar?

17      A.    Yes.  It's through Signa.

18      Q.    When y'all left to go to Cullman,

19  did either of y'all have a job lined up up

20  there?

21      A.    No, sir.

22      Q.    Okay.  Why Cullman?

23      A.    We had had some friends up there.

# FREEDOM COURT REPORTING

Page 37

1   Well, I moved -- me and him -- my mother

2   and them had broke me and him up.  We had

3   divorced.

4       Q.    Your husband?

5       A.    Yeah.  I had divorced my husband,

6   and me and my kids had moved up there.  And

7   when we had moved up there, he had called

8   on the phone because I had rented a Budget

9   truck to move.  And I had called him over

10  the phone to ask where some papers was --

11  the tax papers was and everything so he

12  told me.  And he had worried about that I

13  could not drive the big Budget truck to

14  move.  And I asked him, I said, well, since

15  I can't drive the big Budget truck, will

16  you drive it for me?  And he said sure I

17  will drive the big budget truck for me

18  (sic).

19      So when he drove the big Budget

20  truck up there, once he drove it up there

21  and helped me move, then me and him got

22  back together once we got back up there.

23  And now we're back married.

## FREEDOM COURT REPORTING

Page 53

1    Atenol, and HZ2Z.   All that for my high

2    blood pressure.

3        Q.    Seizures.   Have they gone away?

4        A.    Yes.   No.   They stay under control

5    because I take my Tegretol.

6        Q.    Do you still have see seizures?

7        A.    No.

8        Q.    Good.

9        A.    As long as I stay on my seizure

10   medicines, they stay under control.

11       Q.    Any other big health problems?

12   I'm not talking about colds or anything

13   like that.

14       A.    No.

15       Q.    Tell me, if you can, let's talk

16   about when you fell.   It was in February

17   of, you told me the date.   What was it

18   again?

19       A.    February 27th, 2004.

20       Q.    Tell me a little bit about why you

21   were there, what happend, that sort of

22   thing.

23       A.    We were there to get the oil

### 367 VALLEY AVENUE
### (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

                                                    Page 54

1   changed in my husband's truck.

2       Q.    And were you also there to shop or

3   were you just there strictly to get the oil

4   changed?

5       A.    Just there to get the oil changed

6   in the truck.

7       Q.    So pull up to the TLE place.

8       A.    Yes, sir.

9       Q.    And I'm sure somebody came out and

10  said, what would you like done?

11      A.    Yes, sir.

12      Q.    And once you essentially turned

13  your vehicle over to them, did you go

14  inside the waiting area there in the

15  Wal-Mart?

16      A.    Yes, sir.

17      Q.    And approximately, how long were

18  you there?

19      A.    I don't remember at this time.

20      Q.    When you brought your car in, did

21  you see Steve?

22      A.    Yes, sir, sure did.

23      Q.    Did you speak to him or, you know,

**FREEDOM COURT REPORTING**

Page 55

1    --

2       A.    Yes, sir.

3       Q.    -- exchange any nicities?

4       A.    We just said hey to him.

5       Q.    Okay.  He was working probably?

6       A.    Yes, sir.

7       Q.    And what was, if you know, what

8    was Steve's position at Wal-Mart at that

9    time?

10      A.    He was an oil changer.

11      Q.    A technician?

12      A.    Yes, sir.

13      Q.    Is Steve married?

14      A.    Yes, sir.

15      Q.    Do y'all socialize with his wife

16   as well?

17      A.    Yes, sir.

18      Q.    What's her name?

19      A.    Diane.

20      Q.    Before you moved, about how

21   frequently would you get to together with

22   Steve and Diane?

23      A.    Pretty regularly.

# FREEDOM COURT REPORTING

Page 56

1    Q.    Once a week?

2    A.    About once a week, yes, sir.

3    Q.    Okay.  So you were sitting in the

4  waiting area to change the oil.

5    A.    Yes, sir.

6    Q.    And pull your car up over the pit

7  and change your oil.  What's the next thing

8  you remember?

9    A.    We went shopping --

10    Q.    In the store?

11    A.    -- while we waited to get the oil

12  changed, yes, sir.

13    Q.    Did you buy anything?

14    A.    No, sir.

15    Q.    Did you hear your name called over

16  the PA?  Is that how you knew your car was

17  ready?

18    A.    Yes, sir.

19    Q.    So they call your name over the

20  PA, what happens next?

21    A.    We come back, and we paid for our

22  vehicle --

23    Q.    All right.

**FREEDOM COURT REPORTING**

Page 57

1      A.     -- to get fixed.

2      Q.     Right there at the inside cash

3  register?

4      A.     Yes, sir.

5      Q.     Then what happened?

6      A.     The lady come in and she put the

7  keys down on the counter and told us our

8  vehicle was ready.  Well, she pulled --

9  first of all, she pulled the vehicle out of

10  the pit.  And she didn't pull it in a

11  parking place.  She just pulled it directly

12  out from the pit, a few feet out from the

13  pit.

14      Q.     Okay.  Did she -- before she layed

15  the keys on the counter, did she pull the

16  truck out before that or after that?

17      A.     She pulled it out before.

18      Q.     And then brought you the keys?

19      A.     Right.

20      Q.     Okay.  And I'm going to do some

21  drawing.

22      A.     Okay.

23      Q.     With your guidance if you don't

**FREEDOM COURT REPORTING**

Page 62

1  here at the end.

2      Q.    We'll just say, here's the corner.

3      A.    Right.

4      Q.    All right.  And she stops it

5  where?  Right in here?

6      A.    Right.  Right here in the end of

7  the pit.

8      Q.    And we'll put truck.

9      A.    Right.  In the end of the pit

10 right there.

11     Q.    Okay.  Truck.

12     A.    Right.

13     Q.    Now, --

14     A.    The end of the building right

15 there at the end of the pit.

16     Q.    She comes and gives you the keys.

17     A.    Right.

18     Q.    Then what happens?

19     A.    All right.  She comes in and gives

20 me the keys.  We go out -- we pay, we go

21 out and we go to get in our vehicle.  We go

22 to get in our vehicle.  We walk to our

23 vehicle.  When we walk and everything the

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

**FREEDOM COURT REPORTING**

Page 70

1    Q.    I'm trying to figure out who all

2  was there when you fell.

3    A.    Well, Steve was sort of, like,

4  right over in this area.

5    Q.    Okay.  Steve and then Lance?

6    A.    Right.  Yes, sir.

7    Q.    Pretty good isn't it?  All right.

8  So the three of them are talking and you

9  come to join the conversation.  When you

10  came to join the conversation, did you have

11  to pass between the truck and the pallet?

12    A.    Yes, sir.

13    Q.    All right.  And when you passed

14  between the truck and the pallet, how much

15  space was there between the truck and the

16  pallet?

17    A.    There was a very little space.

18    Q.    Okay.  When you passed between the

19  truck and the pallet, did you see the

20  pallet?

21    A.    No, sir.

22    Q.    Did you trip over the pallet?

23    A.    No, sir.

# FREEDOM COURT REPORTING

Page 71

1    Q.    Did you kick the pallet?

2    A.    My foot brushed the pallet when I

3    went by.

4    Q.    Okay.  And when your foot brushed

5    the pallet, did you look down and say, oh,

6    what was that?

7    A.    Yes, sir.  I glanced down at the

8    pallet to see what my foot had brushed.

9    Q.    All right.  Okay.  So you walked

10   between the truck and the pallet, your foot

11   brushes the pallet, you look back to see

12   what your foot brushed.

13   A.    Yes, sir.

14   Q.    And then you joined the

15   conversation?

16   A.    Yes, sir.

17   Q.    Conversations over with.

18   A.    Yes, sir.  And I sort of just

19   twisted around.

20   Q.    Just to go get back in the

21   passenger side.

22   A.    Yes, sir.  Just to go turn around

23   to go back around the back of the truck to

**FREEDOM COURT REPORTING**

Page 76

1    Q.    All right.  Now, about when you

2    passed been the truck and the pallet, your

3    foot brushes the pallet; correct?

4    A.    Yes, sir.

5    Q.    And you look back to see what it

6    was your foot brushed up against.

7    A.    Yes, sir.

8    Q.    About how much time elapsed

9    between when you looked back and saw the

10   pallet and when you turned back around to

11   go get in the passenger side of the car?

12   A.    I don't know at this time.

13   Q.    I mean, did y'all have a long

14   conversation, or y'all just shooting the

15   breeze a little bit?

16   A.    About five minutes.

17   Q.    Okay.  So it wasn't like --

18   A.    It wasn't -- no.

19   Q.    Does the picture that we're going

20   to mark as an exhibit, does that pallet

21   apear to be the pallet you're talking about

22   or something like it?

23   A.    Yes, sir, it was the exact pallet.

# FREEDOM COURT REPORTING

Page 77

1       Q.    And I know it's out there.    In

2   this picture there's nothing, you know,

3   around it to prevent you from seeing it.

4   Was there anything preventing you from

5   seeing it?

6       A.    No, sir.

7       Q.    When you fell over it?

8       A.    No, sir, there sure wasn't.

9       Q.    Okay.    It wasn't hidden from view

10  or anyhting?

11      A.    No.

12      Q.    But it was just one pallet?

13      A.    It was just one pallet.

14      Q.    You can't have my notes.

15      A.    Okay.

16      Q.    Okay.

17      A.    I could draw them.

18      Q.    Yeah.    Now, Mrs.Blalock, we spent

19  a lot of time talking about this drawing

20  that I drew with a little bit of guidance

21  from you.    I've marked this as Defendant's

22  Exhibit 1.    Is this the drawing that we've

23  been referring to?

**FREEDOM COURT REPORTING**

Page 78

1          (Whereupon, Defendant's Exhibit 1

2          was marked for identification

3          and copy of same is attached

4          hereto.)

5     A.    Yes, sir, it sure is.

6     Q.    Okay.  And where -- I'm going to

7  put, like, a star, okay?

8     A.    Okay.

9     Q.    Where I put this star, that's

10  where you passed between the truck and the

11  pallet we discussed.

12    A.    Yes, sir.

13    Q.    And the pallet that's -- that's

14  where -- is the pallet we're refering to

15  I'm going to mark in this picture; correct?

16    A.    Yes, sir.

17    Q.    Now, it's my understanding that

18  not that day but soon after your fall,

19  maybe the next day or the following day,

20  you went to the hospital?

21    A.    Yes, sir.

22    Q.    Is that the first medical

23  treatment you sought for your injuries?

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

## FREEDOM COURT REPORTING

Page 94

1   about this accident?

2       A.   No, sir.

3              MR. DELASHMET:  Can I make a

4   photo copy of this?

5              MR. MALONE:  Sure can.

6              MR. DELASHMET:  We're almost

7   done.  I mean, I'm, like, at the tail end.

8          (Off the record.)

9          (On the record.)

10      Q.   (By Mr. DeLashmet)  I'm going to

11   mark exhibit two, okay?

12              (Whereupon, Defendant's Exhibit 2

13                 was marked for identification

14                 and copy of same is attached

15                 hereto.)

16      A.    All right.

17      Q.    Now, Exhibit 2 is the photographs

18   we were talking about previously; correct?

19   Is Exhibit 2 the photograph we were talking

20   about previously?

21      A.    Yes, sir.

22      Q.    And when we were refering to this

23   picture, we were refering to this top

**FREEDOM COURT REPORTING**

Page 95

1    picture here; right?

2        A.    Yes, sir.

3        Q.    And just so we'll, again for

4    references purposes, if we're looking at

5    the top picture on Exhibit 2, y'all's

6    pickup truck was parked to the left.

7        A.    Yes, sir.

8        Q.    And you walked between the corner

9    of this pallet and the pickup truck?

10       A.    Yes, sir.

11       Q.    And so the front of the truck

12   would have been out here.

13       A.    Yes, sir.

14       Q.    And so walking this way is when

15   your foot brushed up against the pallet and

16   you looked back to see what you had brushed

17   up against; correct?

18       A.    Yes, sir, that's correct.

19       Q.    And then when you fell, again

20   looking at the top picture, you said your

21   hands hit the pallet -- you had to fall

22   back here some place, didn't you?

23       A.    Yes, sir.  My hands hit on the

## FREEDOM COURT REPORTING

Page 101

1    and the pallet, at the time that you did

2    that, did you look down when your foot

3    brushed the pallet, or did you look back at

4    the pallet after your foot brushed it?

5        A.    Now, repeat the question again to

6    me.

7        Q.    Okay.  When you said you came --

8    walked between the car, truck, I'm sorry,

9    the back of the truck and the pallet,

10   okay?  And your foot, you testified

11   earlier, brushed the pallet, okay?  Did you

12   look down and see the pallet, or did you

13   look back and see the pallet?

14       A.    I looked down.

15       Q.    Okay.  All right.  Defendant's

16   Exhibit 1, Denise, and I do believe Pemble

17   has already made this statement, but it is

18   not drawn to scale, is it?

19       A.    No, sir.

20       Q.    And where the names are is not

21   necessarily standing at the time that the

22   trip and fall occurred;  is that correct?

23       A.    That's correct.

**FREEDOM COURT REPORTING**

Page 102

1    Q.    And the line that was drawn by

2    Pemble where you walked from having paid,

3    between the pit and the truck and then

4    around between the pallet and the truck, is

5    not the exact course that you took, is it?

6    A.    No.

7    Q.    Okay.  And I just mean exact but

8    generally speaking, it is?

9    A.    Right.  That's correct.

10             MR. DELASHMET:  And I

11    stipulate I can't draw worth a dern.

12             MR. MALONE:  In no matter

13    whatsoever.

14             MR. DELASHMET:  That's why I

15    have to use lines and rectangles.

16    Q.    (By Mr. Malone)  Denise, do you

17    know that that is, and I'm looking at

18    Defendant's Exhibit No. 2, do you know that

19    that is the exact same pallet that you

20    tripped over or is it one that looks the

21    same as that?

22    A.    One that looks the same.

23    Q.    Is that the exact location of that

**FREEDOM COURT REPORTING**

Page 103

1  pallet to the best of your memory of where

2  it was located at the time that you tripped

3  over it?

4     A.   Yes.

5     Q.   You don't have any idea, do you,

6  as to when these pictures were taken on

7  Defendan't Exhibit 2 relative to when you

8  tripped and fell, do you?

9     A.   No, I do not.

10          MR. MALONE:   That's all I

11  have.

12          MR. DELASHMET:   Can I ask?

13          MR. MALONE:   Sure. You may,

14  yes, sir.

15

16  CROSS EXAMINATION BY MR. DELASHMET:

17     Q.   When Steve told you that the folks

18  at Wal-Mart hadn't moved the pallet, did he

19  say why they hadn't moved it or who?  Was

20  there any further identification of who

21  "they" were or why they hadn't moved the

22  pallet?

23     A.   He did not say.

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**





